# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| JENNIFER FOSTER, ET AL. | CIVIL ACTION NO. 18-01178 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MATTHEW JETER, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Defendants City of Bossier City ("Bossier") and Matthew Jeter ("Jeter") (collectively "Defendants") are before the Court on a Motion to Dismiss (Record Document 4) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs allege the following facts in their Complaint (Record Document 2):

Carl Michael Foster ("Foster") was arrested and taken to the Bossier City Police station on or about July 13, 2017. On arrival, Foster was taken to an interrogation room where he was questioned by Jeter, a narcotics agent with the Bossier City Police Department. During the questioning, Jeter offered Foster leniency in exchange for his cooperation as a confidential informant ("CI"). During their conversation, Foster spoke "very loudly," and the conversation regarding Foster's cooperation was overheard by an unnamed third party who was being held in an adjacent room.

Foster was eventually released and allowed to return to his home. A few days later, Foster was approached by the unnamed third party who overheard Foster and Jeter at the police station. He warned Foster that he was in danger for being a "snitch." Foster

reported this to Jeter, who advised Foster that he would only receive leniency if he continued with his agreement to cooperate as a CI. Foster also reported this to his brother, who, likewise, reported to Jeter.

Despite his concerns, Foster was officially registered as a CI and began communicating with several individuals to "set up buys," which could be monitored and recorded by Jeter and other Bossier City Police officers. As a result of his cooperation with Defendants, Foster was murdered on or about September 8, 2017. Plaintiffs, who are survivors of Foster, filed the current lawsuit on September 7, 2018, asserting claims against Defendants under 42 U.S.C. § 1983 and Louisiana tort law.

## LAW AND ANALYSIS

### I) Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555–56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally may not "go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Additionally, courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678–79, 129 S. Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

**II) Analysis**

    **a. State-Created Danger**

Plaintiffs allege that Foster's Fourteenth Amendment substantive due process rights were violated by Defendants. Specifically, they allege that Defendants are liable for Foster's death under the "state-created danger" theory of liability. See Record Document

2 at 8; see also Record Document 8 at 2. Defendants argue in the instant motion that this theory of liability is not recognized by the United States Court of Appeals for the Fifth Circuit. Plaintiffs argue that it is, in fact, recognized by the Fifth Circuit and that they have alleged enough facts to sustain such a claim.

It is well settled that generally, "a state official has no constitutional duty to protect an individual from private violence." McClendon v. City of Columbia, 305 F.3d 314, 324 (5th Cir. 2002) (*en banc*) (*per curiam*) (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed. 2d 249 (1989)). However, some circuits have recognized an exception to this rule where injury results from a state-created danger. In 2010, this Court dismissed a state-created danger claim, noting that the Fifth Circuit had not recognized a cause of action for such a claim. See Hilman v. Ammons, 2010 WL 4117222 (W.D. La. 2010). Specifically, the Court stated that "[w]ithout guidance from the Fifth Circuit, [it was] unwilling to create a right of action out of whole cloth." Id.

Since the time of this Court's decision in Hilman, the Fifth Circuit has not provided the Court with any reason to reach a different conclusion in the current case. As recent as 2017, the Fifth Circuit declined to adopt the state-created danger exception as the law of the circuit. See Doe v. Columbia-Brazoria Indep. Sch. Dist., 855 F.3d 681 (5th Cir. 2017) (citing Estate of Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 983 (5th Cir. 2014)). In so doing, the Fifth Circuit noted that its "panels have 'repeatedly noted' the unavailability of the theory." Id. at 688. Therefore, because the Fifth Circuit has not expressly adopted the state-created danger theory, this Court will not allow Plaintiffs' claims under that theory to proceed.

In their Opposition to Defendant's Motion to Dismiss (Record Document 8), Plaintiffs argue that Defendants had a duty to protect Foster by virtue of the "special relationship" that existed between them. See Record Document 8 at 3-5. Plaintiffs argue that this "special relationship" theory is an exception to the Fifth Circuit's refusal to recognize a state-created danger theory. However, it is clear that these are actually two separate theories. See Columbia-Brazoria Indep. Sch. Dist., 855 F.3d at 689 (stating that because the possibility of a state-created danger argument was forfeited, the plaintiff was left "with only the special-relationship theory"). Plaintiffs did not assert a "special relationship" claim in their complaint. See Record Document 2. Additionally, the Fifth Circuit has only extended this theory to a few very limited circumstances.

In DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189 (1989), the Supreme Court noted that its categorical rule that a state's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause is subject to at least one very limited exception. See Does ex rel. Magee v. Covington County School Dist. ex rel. Keys, 675 F.3d 849 (5th Cir. 2012). Under this exception, "a state may create a 'special relationship' with a particular citizen, requiring the state to protect him from harm, 'when the state takes a person into custody and holds him there against his will.'" Id. (quoting Deshaney). A special relationship has been found in cases of incarceration, Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976), and involuntary commitment to an institution, Youngberg v. Romeo, 457 U.S. 307, 315-16, 102 S.Ct. 2542 (1982). In addition, the Fifth Circuit has extended the special relationship exception to the placement of children in foster care. See Griffith v. Johnston, 899 F.2d 1427 (5th Cir. 1990) (reasoning that "the state's duty to provide services stems from the limitation which

the state has placed on the individual's ability to act on his own behalf"). The Fifth Circuit "has not extended the special relationship exception beyond these three situations." Magee, 675 F.3d at 855.

Here, Plaintiffs have not alleged any facts sufficient to survive a Rule 12(b)(6) motion on a special relationship claim. Additionally, any attempt to amend the complaint would be futile, as it is clear from the facts alleged in Plaintiffs' complaint that Michael Foster was not incarcerated, involuntarily committed, or placed into a foster home. Furthermore, it is clear from the facts alleged that Foster had not been taken into the custody of the state against his will and had not been deprived of "the ability or opportunity to provide for his own care and safety" at the time of his death. See Magee, 675 at 857. Thus, Plaintiffs could not plausibly allege a special relationship claim.[1] As such, Plaintiffs' claims under 42 U.S.C. § 1983 should be dismissed.

### b. Louisiana Tort Law Claims

Plaintiffs also assert claims against Defendants under Louisiana tort law.[2] While Plaintiffs did not explicitly identify the alleged negligent acts in the tort law section of their complaint, the Court has identified at least three tort claims in the other sections of the complaint, which were adopted by reference in the tort section. First, Plaintiffs allege that Jeter was negligent in his handling of Foster as a compromised CI. See Record Document

---

[1] The Fifth Circuit holds that when futility is the basis for denial of leave to amend, the court uses the Rule 12(b)(6) plausibility standard to evaluate the sufficiency of the proposed amended complaint. See Adhikari v. Kellogg Brown & Root, Inc., 845 F.3d 184, 199–200 (5th Cir. 2017).

[2] Under 28 U.S.C. § 1367(c)(3), the Court has discretion as to whether to dismiss Plaintiffs' state-law claims after dismissing the claims constituting the original basis for supplemental jurisdiction. Here, the Court chooses to continue exercising jurisdiction over the state-law claims.

2. Second, they allege that Bossier is vicariously liable for Jeter's negligence. See Record Document 2 at 3. Third, they allege that Bossier is directly liable for the negligent hiring, training, retention, and supervision of Jeter. See Record Document 2 at 11.

Defendants make only two arguments in the instant motion regarding Plaintiffs' tort claims. First, they argue that these claims should be dismissed because "Louisiana does not recognize the state-created danger theory." Record Document 4-1 at 13; see also Record Document 9 at 5. Second, they argue that "even were this Court find some basis in Louisiana tort law for Plaintiffs' claims, this Motion should still be granted and Plaintiffs' claims dismissed because Defendants are entitled to immunity under Louisiana Revised Statute 9:2798.1." Record Document 4-1 at 13. The Court will address these arguments in turn.

The Court is not convinced by Defendants' argument that Plaintiffs' tort claims should be dismissed because Louisiana does not recognize a state-created danger theory of liability. Plaintiffs asserted claims for negligence under Louisiana Civil Code Article 2315. The standard negligence analysis employed by Louisiana courts in determining whether to impose liability under Article 2315 is the duty/risk analysis. See Mathieu v. Imperial Toy Corp., 646 So.2d 318 (La.1994). In order for liability to attach under a duty/risk analysis, "a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or

scope of protection element); and, (5) actual damages (the damages element)." Id. (citing Roberts v. Benoit, 605 So.2d 1032 (La.1991). Defendants made no arguments in the instant motion regarding the sufficiency of Plaintiffs' complaint in asserting a claim under Article 2315. Therefore, Plaintiffs' first argument is rejected.

Subsection B of La. R.S. 9:2798.1 (the "Discretionary Immunity Statute") provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or their failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." In other words, the Discretionary Immunity Statute provides immunity to state officials for discretionary acts. See Frank v. Parnell, 2019 WL 2438685 (W.D. La. 2019). The Louisiana Supreme Court has emphasized that "discretionary function immunity only 'applies to policymaking or discretionary acts.'" Cloud v. Stone, 2019 WL 238066 (W.D. La. 2019). It does not protect against "legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e., decisions based on social, economic, or political concerns." Id. (quoting Lockett v. New Orleans City, 639 F. Supp.2d 710 (E.D. La. 2009), aff'd 607 F.3d 992, (5th Cir. 2010). The decisions of police officers working in the field are "operational level" and discretionary immunity is not applicable because they are not engaged in policy-making or ministerial acts. See Fridge v. City of Marksville, 2019 WL 1923445 (W.D. La. 2019).

Here, Plaintiffs' allegations surrounding Jeter's conduct amount to negligence at the operational level. Therefore, these claims are not barred by the Discretionary Immunity Statute. Likewise, Plaintiffs' vicarious liability claim against Bossier for Jeter's alleged negligence is not barred. See Frank v. Parnell, 2019 WL 2438685 (W.D. La.

2019). Therefore, as to these claims, the instant Motion to Dismiss (Record Document 4) should be denied.

As mentioned above, Plaintiffs also asserted a claim against Bossier for negligent hiring, retention, training, and supervision. This claim is barred by the Discretionary Immunity Statute, as decisions on hiring, retaining, supervising, and training employees are discretionary acts. See Roberts v. City of Shreveport, 397 F.3d 287 (5th Cir. 2005); see also Curran v. Aleshire, 67 F.Supp.3d 741, 763 (E.D. La. 2014). Therefore, as to this claim, the instant Motion to Dismiss (Record Document 4) should be granted.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Record Document 4) is hereby **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims under 42 U.S.C. § 1983 are hereby **DISMISSED**. Additionally, Plaintiffs' Louisiana tort law claims for Bossier's negligent hiring, training, retention, and supervision are hereby **DISMISSED**. Plaintiffs' negligence claim against Jeter and vicarious liability claim against Bossier have survived Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), and will likely be the subject of Rule 56 motion practice.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 10th day of July, 2019.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT