UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JENNIFER FOSTER, ET AL. | CIVIL ACTION NO. 18-1178 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MATTHEW JETER, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 53) filed by Defendants Matthew Jeter ("Jeter") and Bossier City ("Bossier", collectively "Defendants"). The Motion asserts that Plaintiffs—Jennifer Foster, John Michael Foster, and Valerie Melissa Foster (collectively "Plaintiffs" or "the Fosters")—cannot provide sufficient evidence to prove two key elements of their negligence claim against Defendants. See Record Documents 53. The motion is opposed by Plaintiffs. See Record Document 56. Defendants have filed a reply to the Plaintiffs' opposition. See Record Document 58.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The instant suit alleges Defendants are liable for the death of Plaintiffs' father, Carl Michael Foster ("Foster"). See Record Document 30.[1] After being arrested on July 13, 2017, Foster was offered an opportunity to work as a confidential informant for the Bossier City Police Department. See id. at ¶11. Subsequently, Foster was gruesomely murdered on September 8, 2017. See id. at ¶20. Plaintiffs allege Foster's murder was proximately

---

[1] Record Document 30 is Plaintiffs' Amended and Supplemental Complaint for Damages. While portions of the allegations in this document were ordered partially stricken by this Court for noncompliance with previous orders, see Record Documents 41, 42, the Amended and Supplemental Complaint for Damages remains the operative complaint, as modified by the partial order to strike.

caused by Defendants' enrolling and use of him as a confidential informant and subsequent failure to protect him once they became aware his identity had been compromised. See id. at ¶24.

The Court has previously dismissed all of Plaintiffs' claims except for their state law negligence claim against Jeter and their vicarious liability claim against Bossier. See Record Document 11. Defendants' instant motion seeks to dismiss Plaintiffs' remaining claims based on an asserted inability of Plaintiffs to provide evidence essential to two elements of Plaintiffs' negligence claim against Jeter. Since the vicarious liability claim against Bossier is entirely dependent upon the viability of the negligence claim against Jeter, disposition of the latter would also dispose of the former. See Record Document 53-1 at 15.

## LAW AND ANALYSIS

### I.     Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, 888 F.3d 170, 175 (5th Cir. 2018) (quoting Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010)). The Court will not "weigh evidence or make credibility findings." Renfroe v. Parker, 974 F.3d 594, 599 (5th Cir. 2020) (citation omitted). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Turner v. Baylor

Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

## II. Louisiana Negligence Standard

Louisiana law regarding negligent torts springs from the Louisiana Civil Code's declaration that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. Louisiana utilizes a "duty-risk analysis" for negligence claims, which in its most common formulation requires proof by the plaintiff of five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

Audler v. CBC Innovis Inc., 519 F.3d 239, 249 (5th Cir. 2008) (quoting Lemann v. Essen Lane Daiquiris, Inc., 923 So. 2d 627, 633 (La. 2006)).

Defendants' motion relies on two primary assertions, rooted in the second and fourth elements of the Louisiana duty-risk analysis. First, that Plaintiffs cannot prove that Jeter breached a duty owed to Foster.[2] See Record Document 53-1 at 11. Second, that Plaintiffs cannot prove that any action or inaction by Jeter was the legal cause of Foster's death. See Record Document 53-1 at 16. That is, even assuming Jeter breached a duty to Foster and that breach was a cause-in-fact of Foster's death, Foster's murder was not within the scope of liability of Jeter's misconduct. Each of these arguments will be taken up in turn.

---

[2] Defendants' brief initially state that they are challenging Plaintiffs' ability to establish the *duty* element of their negligence claim, but the actual briefing that follows is focused on Plaintiffs' inability to establish the *breach* element. See Record Document 53-1 at 11.

### A. Breach Element

In order to analyze whether Plaintiffs have provided some evidence of breach sufficient to survive summary judgment, it is necessary first to make two prerequisite determinations. First of these is how exactly to define the scope of the duty which Jeter is alleged to have breached. Second is to identify the specific instances of breach asserted by Plaintiffs so that each may be examined separately.

Defendants propose a formulation of the duty applicable to this case which calls for a police officer to act reasonably "under the totality of the circumstances." Record Document 53-1 at 11 (quoting Wellman v. Evans, 876 So. 2d 954, 959 (La. Ct. App. 3d Cir. 2004)). While Wellman is a case that is factually very similar to this one, concerning the murder of a police informant after his identity was allegedly revealed to the murderer by police officers, it is a singular case in expressing the totality of the circumstances approach, and is also a lower appellate court case. When determining how state law is to be applied, this Court is not bound by decisions of Louisiana's intermediate appellate courts, but must instead guess at what the Louisiana Supreme Court would rule on the same facts. See Escalante v. Lidge, 34 F.4th 486, 493 n.9 (5th Cir. 2022) (citations omitted). The court in Wellman drew in part on a Louisiana Supreme Court decision in Syrie v. Schilhab, which stated that "the scope of an officer's duty is to choose a course of action which is *reasonable* under the circumstances." 693 So. 2d 1173, 1177 (La. 1997) (emphasis in original). As is apparent from the emphasis in the previous quote, the Syrie court was focused on the reasonableness inquiry and dispelling any suggestion that a police officer was duty-bound to choose "the 'best' or even a 'better' method of approach." Id.

This statement of duty as an obligation to act reasonably is no different than the standard duty applicable in most negligence cases, and an insistence that the "totality of the circumstances" be taken into account would seem to add little to the discussion. To the extent necessary, the Court would agree that a more limited approach that circumscribes the scope of the duty owed by Jeter based on only certain factors or circumstances does not apply here. On the other hand, Defendants also characterize at least some of Plaintiffs' claims as attempting to cast liability on Jeter for failing to protect Foster from the criminal activity of a third party unaffiliated with the Defendants. See Record Document 58 at 1. The Court therefore also considers one of the Louisiana Supreme Court's seminal cases examining the duty of a merchant to protect customers from the criminal acts of third parties, Posecai v. Wal-Mart Stores, which approaches a generally analogous situation. 752 So. 2d 762 (La. 1999). In Posecai, Louisiana's highest court identified and analyzed four approaches to determining whether a duty should be imposed on a merchant to take reasonable steps to protect customers from harm caused by third parties, one of which was a totality of the circumstances test. See id. at 766–68. The Posecai court ultimately rejected the totality of the circumstances approach, choosing to adopt a balancing test instead. See id. at 768. To the extent applicable, this Court may apply the balancing test approach from Posecai in this case as an alternative to a totality of the circumstances test if it appears to be more useful in carefully delimiting the scope of any duty owed by Jeter to Foster.

With a general approach to the duty prong of the Louisiana duty-risk analysis established, it is next necessary to identify exactly what instances of alleged breach are at issue in this case. Defendants, in their brief in support of motion for summary judgment, complain that Plaintiffs have not well defined the breach or breaches upon which they

hang their case. See Record Document 53-1 at 14. Defendants, as well, with their emphasis on the totality of the circumstances test for duty, may also be somewhat imprecise in their delineation of what breaches are alleged as a result. But it is "every *act* whatever of man" that may give birth to liability, not every totality of the circumstances. La. Civ. Code art. 2315 (emphasis added). Therefore, it is important to specify what alleged breaches are at issue.

The Court notes two ways in which Plaintiffs have clearly pleaded a negligent breach by Jeter in their complaint and briefing: that Jeter failed to elicit information and cooperation from Foster in a setting that would prevent him from being overheard by others, and that Jeter continued to utilize Foster as an informant after having knowledge that Foster's identity as an informant was compromised. See Record Document 56 at 12. Defendants focus portions of their argument in support of summary judgment on Jeter's actions after having arrested Foster a second time and seem to construe Plaintiffs' arguments as asserting that Jeter breached a duty to Foster by not providing him some sort of protection after he was bailed out of jail. See, e.g., Record Document 53-1 at 15; Record Document 58 at 2. Having fully examined both the Amended and Supplemental Complaint for Damages and Plaintiffs' briefing in opposition to the present Motion for Summary Judgment, the Court does not find that Plaintiffs have made or supported any argument in favor of Jeter's negligence in how Foster was handled after his second arrest, and therefore any such claim—even assuming a duty existed for Jeter to take some action other than he did to protect Foster's well-being at that time—is considered abandoned.

The first potential breach to be examined, then, is whether Jeter failed to take reasonable steps to ensure the confidentiality of Foster's involvement with police as an informant on July 13, 2017. It was on this date that Foster was first arrested and Jeter

first spoke to him, both collecting information on co-conspirators in a drug distribution operation being investigated and discussing the possibility of Foster continuing in a confidential informant role with narcotics officers. See Record Document 53-3 at 8–9.  As an initial matter and noting the totality of the circumstances test and/or the balancing approach used to delimit the scope of any duty owed by Jeter to Foster, the Court believes it is an appropriate finding that a police officer has a duty to take reasonable steps to protect the confidentiality of discussions with a detainee when those discussions turn to cooperating with police or informing on others being investigated. That duty extends to conducting such discussions or interrogation in a location or under such conditions that they cannot be easily overheard by other interested criminal parties.  Steps necessary to prevent eavesdropping require little of police other than moving to a different location in most circumstances, and the gravity of the harm attendant with a confidential informant's cooperation with police becoming widely known is well recognized by criminal courts.

      Defendants argue that Plaintiffs cannot meet their burden to prove the breach element on this particular claim, but the evidence offered leaves questions unanswered and creates a genuine issue of material fact preventing summary judgment. Jeter, in his deposition, admits that he questioned Foster on July 13, 2017, after he was first arrested and charged with possession of drug paraphernalia. See Record Document 53-3 at 7–9. Although Jeter did not recall what information Foster provided in that interrogation, and did not keep his notes from the time, he does admit that Foster had provided him some "intel" on July 13th, and that Jeter therefore considered signing him up as a confidential informant at the time. See id. at 7–8. It is undisputed that Jeter did not formally enroll or "sign up" Foster as an informant until a later encounter on July 25, 2017, but Jeter's actions on that date are not at issue. See id. Jeter also admits that he spoke with two

other individuals on July 13th who were connected to Foster's arrest and the investigation at Foster's home. See Record Document 56-4 at 16. Jeter does not recall the identity on one of those individuals but admits that he also spoke to this other individual at the police station on July 13th and that they may have been in another interview room adjacent to the room in which he spoke to Foster. See id. at 16–18. Jeter also states that Foster had a "loud, deep voice," and that he moved him to another location before specifically talking to him concerning becoming a confidential informant, indicating a specific knowledge that his discussions with Foster might be overheard by the nearby detainee. Id. at 19.

Plaintiffs provide an affidavit by Dustin Hall, who claims to be the other individual questioned by police on July 13, 2017, in connection with the arrests at Foster's home. See Record Document 56-5.[3] He states that he was questioned by a narcotics officer on that date, whose identity he does not recall, and that he subsequently heard the same individual interrogating Foster in an adjacent or nearby room. See id. at 1. Hall also states that he knew Foster, was familiar with Foster's voice, and clearly heard Foster provide specific incriminating information regarding other individuals on that date. See id. at 2. Taken together, all this information produces a genuine issue of fact as to whether Jeter questioned Foster and elicited incriminating information on other individuals—whether or not Jeter specifically discussed "signing him up" as a continuing informant—in a situation where he knew this discussion could be overheard by another detained individual connected to the same investigation. The Court additionally holds that such facts are

---

[3] Defendants have made several objections to the content of this affidavit. See Record Document 58 at 4–5. However, these objections concern later paragraphs of the affidavit which were not considered by the Court in reaching the present ruling. As a result, the Court finds it unnecessary to address Defendants' evidentiary objections at this time.

material to determining whether Jeter breached his duty to take reasonable steps to keep such discussions confidential.

As to Plaintiffs' second claim, that Jeter was negligent by continuing to use Foster as an informant after having actual knowledge that his identity as an informant had been compromised, the Court must concur with Defendants' argument that insufficient evidence has been presented to support such a claim beyond the summary judgment stage. Even ignoring the question of how much Jeter may have been aware of any potential threat to Foster by his cooperation with police being revealed, Jeter's own declaration states that Foster was never actually employed as an informant in any capacity after July 25, 2017, when he was officially signed up. See Record Document 53-7 at 1. As recounted above, there is only evidence that Foster provided information to Jeter during the July 13, 2017 interrogation. The meeting on July 25th is described as a formality to get Foster to sign an agreement offering to act as a confidential informant but did not involve providing any additional information. See Record Document 53-3 at 8.

Plaintiffs do not point to any evidence in the record that supports the idea that Jeter further utilized Foster as a confidential informant beyond July 13, 2017, or took any other steps in connection to his relationship with Foster that might have exposed Foster to any further danger. The only support Plaintiffs point to is a statement from the deposition of Foster's brother, James Richard Foster, which refers only to his own apprehension that Foster was signed up as an informant after he had personally expressed concerns over Foster's safety to Jeter in a phone call. There is no evidence that Foster was actually involved as a confidential informant in any capacity other than the ministerial task of signing an agreement to cooperate in the future. See Record Document 56-6 at 8. While Plaintiffs also point to a "Confidential Informant Activity Record" concerning Foster dated

August 1, 2017, this record plainly states that there was "no activity" in that period involving Foster. See Record Document 56-3 at 27. The Court therefore finds that Plaintiffs have offered no competent summary judgment evidence that would support a finding of breach on this claim, and therefore this claim should be dismissed.

### B. Scope of Liability Element

As previously stated by the Court, the evidence offered by Plaintiffs leaves questions unanswered and creates a genuine issue of material fact such that Plaintiffs may be able to establish breach on one of their negligence claims at trial. But the Court must still address the remaining contention under the present motion for summary judgment, that is, whether Plaintiffs can also prove that such a breach was a legal cause of Foster's death. Put another way, the Court must consider the scope of liability or scope of protection analysis of the duty-risk analysis.

The Court first notes some confusion in Defendants' briefing on this subject. For instance, while the motion for summary judgment is predicated upon Plaintiffs' inability to prove the scope of liability element, Defendants refer to the "substantial factor" test, which is a test applicable only to the cause-in-fact element of the Louisiana duty-risk analysis. See Record Document 53-1 at 16; see also Rando v. Anco Insulations Inc., 16 So. 3d 1065, 1088 (La. 2009). This is simply an incorrect legal standard for the scope of liability element. Instead, determination of the scope of liability or legal cause element is a policy question based on the underlying factual determinations of foreseeability and ease of association. See Rando, 16 So. 3d at 1088 (citations omitted). While Louisiana courts consider the question a purely legal one, the ease of association and foreseeability factors may present the sort of case-by-case factual considerations that resolution on summary

judgment is not always appropriate. See Lazard v. Foti, 859 So. 2d 656, 665 (La. 2003) (Johnson, J., dissenting).

In addition, both Plaintiffs and Defendants tend to allow their arguments regarding legal cause to drift into theories as to how and whether Jeter's actions could have been a cause of Foster's death, which are arguments related solely to the cause-in-fact element. See Record Document 56 at 13–14; Record Document 58 at 8. This conflation of elements of the duty-risk analysis misses the point of the policy questions inherent in the scope of liability element. Defendants chose to hang their hats in the present motion for summary judgment on legal cause, not cause-in-fact, and therefore the Court must assume solely for the purposes of this motion – just as Defendants did in their briefing – that Jeter's actions *were* the cause-in-fact of Foster's death (assuming breach is proven). The true question in the legal causation analysis at the summary judgment stage, i.e., as a matter of law, is whether liability should be imposed on Jeter or whether liability will be limited only to those more closely involved in Foster's death, like Nathan Smith, who is currently serving a prison sentence for having committed the murder of Foster. See Record Document 53-1 at 17.

As noted above, that policy question is determined by examining the ease of association between the alleged breach and the injury to Foster. In other words, if Jeter did in fact breach a duty to Foster by failing to take reasonable steps to protect his identity as an informant, was it reasonably foreseeable that such a failure of care could lead to Foster's violent death? In examining the ease of association question here, the Court notes that the primary reason confidential informants remain confidential is that if the other criminals they are informing on learn that they are a "snitch," violent retribution is often a likely response. The association is commonly known within the legal justice

system. While there are likely other good reasons for police to keep the identity of informants secret—for instance, to prevent them from being locked out of organized criminal activity if they are known as untrustworthy or cooperating with police, and therefore to protect their utility for future investigations—the need to protect a source from violence by those being informed on is fundamental. The Court again notes that the scope of liability or legal cause element is a policy question based on the underlying factual determination of foreseeability and ease of association. As a result, the Court finds as a matter of law that the scope of liability for Jeter – if he is proven to have carelessly allowed Foster's cooperation to be overheard by others being investigated for related activities – extends to the foreseeable consequence that such knowledge might lead to violence against Foster, and even his murder.

      The Court also points out that while Defendants argue strongly that other individuals were more culpable than Jeter, and therefore his actions or omissions cannot be the legal cause of Foster's death, these sort of arguments are not properly related to the modern conception of scope of liability in Louisiana. See Record Document 53-1 at 18–19. Instead, such arguments are subsumed by Louisiana's system of pure comparative fault. See La. Civ. Code art. 2323. Defendants are welcome to make arguments at trial that Nathan Smith, as an intentional tortfeasor, should bear most or all of the fault for Foster's death. Defendants may even try to prove that Foster's own negligence or the actions of others were additional causes of his death that should be considered when fault is allocated. See, e.g., Record Document 53-1 at 19 (suggesting that Rick Foster's actions placed Foster in the location and circumstances in which he was ultimately killed). However, such considerations of how fault is allocated among multiple tortfeasors are questions entrusted to the jury as trier of fact and weigher of

evidence, and are inappropriate at this summary judgment stage. See <u>Murphy v. Savannah</u>, 282 So. 3d 1034, 1042 (La. 2019) (Genovese, J., dissenting). The Court is comfortable saying only that Jeter may have been negligent under the duty-risk analysis and could possibly be allocated some fault in Foster's death. Defendants have failed to show as a matter of law that such conclusions are categorically excluded at this time.

### C. Vicarious Liability

Bossier's argument in favor of summary judgment is merely that if summary judgment is granted in favor of Jeter, there is no individual defendant for whose actions Bossier could be held vicariously liable. <u>See</u> Record Document 53-1 at 19. Because summary judgment in favor of Jeter is partly denied here, the related vicarious liability claim against Bossier must also remain to the same extent.

### CONCLUSION

Because there is a genuine issue of material fact as to whether Jeter may have been negligent in failing to protect Foster's identity as an informant while questioning him on July 13, 2017, Defendants' motion is **DENIED** as to that specific negligence claim. As to all other negligence claims by Plaintiffs, Defendants' motion is **GRANTED**, and those claims will be **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 27th day of September, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT